IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| DONNA SEAY, ) | Civil Action No. 3:05-1606-TLW-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

On January 16, 2002, Plaintiff applied for SSI and DIB. Plaintiff's applications were denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). After a hearing held May 7, 2004, at which Plaintiff appeared and testified, the ALJ issued a decision dated October 27, 2004, denying benefits and finding that Plaintiff was not disabled because she was able to perform her past relevant work as a towel packer.

Plaintiff was thirty-six years old at the time she alleges she became disabled and forty years old at the time of the ALJ's decision. She has an eleventh-grade education and past relevant work as a cashier and towel packer. Plaintiff alleges disability since November 1, 1999, due to lower back problems and anxiety.

The ALJ found (Tr. 27-28):

1. The claimant has not engaged in substantial gainful activity [since] November 1, 1999.

2. The medical evidence establishes that since no earlier than April 17, 2000, the claimant has the following severe impairments: minimal scoliosis[;] degenerative disc disease[;] and depressive, anxiety, somatoform, and personality disorders. Prior to that date, there is no evidence of any severe impairment.

3. The claimant has no impairment that meets or equals the criteria of any impairment listed in Appendix I, Subpart P, Regulations No. 4.

4. The claimant's assertions concerning her ability to work are not credible.

5. The claimant retains the residual functional capacity set out in the body of this decision, for a wide range of medium exertion work at an unskilled level.

6. The claimant can perform the requirements of her past relevant work as a towel packer, which was unskilled work requiring light exertion.

7. The claimant has not been under a disability, as defined in the Social Security Act at any time since November 1, 1999 (20 CFR §§ 404.1520(f) and 416.920(f)).

On May 26, 2005, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on June 7, 2005.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## **DISCUSSION**

Plaintiff alleges that: (1) the ALJ's decision is not supported by substantial evidence; (2) the ALJ erred in evaluating her pain; (3) the ALJ failed to properly evaluate her mental impairment; (4) the ALJ erred in rejecting testimony from a vocational expert ("VE"); (5) the ALJ erred in substituting her opinion for that of a consulting psychologist, Dr. Hammond; and (6) the ALJ erred in determining that Plaintiff's severe impairments did not begin until April 17, 2000.

A.   Substantial Evidence

Plaintiff alleges that the ALJ's decision is not supported by substantial evidence. In particular, she claims that the ALJ erred in evaluating her mental impairments. The Commissioner contends that the ALJ's decision is supported by substantial evidence.

Substantial evidence is:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence".

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

The ALJ's determination that Plaintiff, despite her severe physical impairments of minimal scoliosis and degenerative disc disease, could perform medium work that did not involve work in

dangerous environments (open dangerous moving machinery, unprotected heights, or driving vehicles) is supported by substantial evidence. Although Plaintiff alleged an onset date of November 1, 1999, the first record of Plaintiff seeking any medical care is from April 21, 2000,[1] when she sought care at the Emergency Department of the Spartanburg Regional Healthcare System ("SRHS") for complaints of burning back pain due to a fall in her bathtub. She was diagnosed with low back pain (lumbar, lumbosacral) and instructed to take Naprosyn and Lortab for pain, use heat, and restrict herself to light activity. Tr. 130-134. On May 24, 2000, Plaintiff returned to the SRHS for complaints of pelvic pain. She was diagnosed with cystitis for which Doxycycline and Lortab were prescribed. Tr. 121-129. On May 31, 2000, Plaintiff returned with complaints of left lower quadrant abdominal and suprapubic acute dull pain and swelling. An ultrasound revealed a small left ovarian cyst and possible hemorrhage or infection. Lortab was prescribed. Tr. 115-120. On June 7, 2000, Plaintiff returned to SRHS complaining that she had run out of pain medication and her medication was not strong enough. Lortab and Celebrex were prescribed. Tr. 113-114. An MRI of Plaintiff's lumbar spine was performed on August 16, 2000, which revealed a protruding disc at T11-12. Tr. 112. On August 23, 2000, Plaintiff was admitted to SRHS with diagnoses of chronic pelvic pain and severe dysplasia of her cervix. She underwent laproscopic examination, total vaginal hysterectomy, and repair of a bladder laceration which occurred during surgery. Plaintiff was discharged on August 25, 2000. Tr. 135-140.

---

[1] Plaintiff claims that the ALJ erred by finding that she did not have any serious impairments until April 21, 2000. As noted above, there is no indication in the record that Plaintiff sought medical treatment for these impairments prior to that time, supporting the ALJ's decision determination. Further, as the ALJ did not find that Plaintiff was disabled at a later date (April 21, 2000), the ALJ's decision does not raise an issue as to a correct date of an onset of disability.

Plaintiff's impairments were primarily treated by medical care providers (including Dr. Gordon Early and Family Nurse Practitioner ("FNP") Betty Abernathy) at Wellness Preventative and Family Health from February 2001 to February 2003. Tr. 163-179. In October 2001, Plaintiff complained to FNP Abernathy of panic attacks and stated that she had been diagnosed with panic attacks at a mental health center several years earlier. She also stated that OxyContin had been prescribed for her chronic back pain caused by scoliosis and degenerative disc disease and expressed concern for the potential for addiction with OxyContin. Plaintiff also noted that she had used Lortab on occasions and had Vioxx at home, but had not been using the Vioxx. Serzone and Xanax were prescribed for Plaintiff's anxiety and Skelaxin or Vioxx and Lortab were prescribed for Plaintiff's degenerative joint disease/chronic back pain. On December 20, 2001, Dr. Early prescribed Lortab for Plaintiff, but noted that Plaintiff was taking more Lortab than was prescribed. Tr. 178.

On February 18, 2002, Dr. Early noted that Plaintiff had violated the narcotics contract she had signed with his practice by obtaining OxyContin from Dr. Connie Godenick (discussed further below). He did, however, note that Plaintiff reported that her pain improved on OxyContin and he prescribe OxyContin for her back pain and Valium for her anxiety. Tr. 174. On May 17, 2002, Plaintiff reported to FNP Abernathy that OxyContin was controlling her back pain, Xanax was controlling her anxiety, and she had returned to school. OxyContin, Xanax, and Remeron were prescribed. Tr. 172. On December 6, 2002, Dr. Early noted that Plaintiff's panic attacks were fairly stable on Xanax, although she was on a pretty high dose that was going up rapidly. Tr. 166. On January 6, 2003, Plaintiff was prescribed OxyContin with no refills and Xanax (quantity 90) with two refills. On January 13, 2003, Plaintiff told FNP that her OxyContin had been stolen at a funeral. Tr. 164. Plaintiff's prescription was renewed. Tr. 164. On February 6, 2003, Plaintiff stated that

she was out of Xanax. Dr. Early noted Plaintiff was unable to account for the 270 tablets of Xanax that had been prescribed in January 2003. He discharged Plaintiff from his care for violating her narcotics contract. Tr. 164.

Plaintiff was treated by Dr. Barbara Ray, a family practitioner, from April to August 2003. Tr. 238-243. On April 15, 2003, Plaintiff was examined by Dr. Ray for complaints of back pain and anxiety attacks. Dr. Ray's examination revealed that Plaintiff had no neurological deficits, some muscle tenderness in her lower lumbar region, and mild scoliosis. Dr. Ray stated that she was reluctant to prescribe Xanax on a regular basis, but provided Plaintiff with Klonopin and Xanax for acute anxiety attacks. She encouraged Plaintiff to schedule an appointment with the Shelby pain specialist and to contact Vocational Rehabilitation. Tr. 243. On May 12, 2003, Plaintiff complained of increased muscle spasms and requested a stronger dose of Klonopin for anxiety. Dr. Ray noted that Plaintiff had no neurological deficits or muscle spasms. She prescribed OxyContin, Flexeril, and a stronger dose of Klonopin. Tr. 241. On August 18, 2003, Plaintiff complained that the Klonopin was too strong and told Dr. Ray that she had been prescribed Xanax in the past. Dr. Ray prescribed Xanax and the anti-depressant Lexapro. Tr. 239.

The ALJ's decision is also supported by the findings of physicians who examined Plaintiff. Plaintiff sought treatment from Dr. Connie Godenick of Inman Family Practice on January 18, 2002. Plaintiff reported she had so much pain in her back that she could not function, and she had anxiety for which she took Xanax. She expressed concern about taking Lortab because of the Tylenol contained in it, but remembered getting excellent pain relief with OxyContin. Dr. Godenick's examination revealed that Plaintiff was tender in her low back and to percussion in her spine, she could flex forward to about forty-five degrees, her reflexes were normal, and straight leg raises were

normal. Dr. Godenick's impression was chronic back pain without significant pathology. Dr. Godenick asked that Plaintiff keep a previously arranged appointment with an orthopaedist and prescribed OxyContin and Xanax. Tr. 236.

Plaintiff was examined by Dr. John V. Duncan at the request of the Commissioner on August 16, 2002. Plaintiff complained of severe anxiety, low back pain, and scoliosis. She claimed that she had back problems since her twenties and had been taking "nerve pills" for eight years. Dr. Duncan found it difficult to get a meaningful history from Plaintiff due to her constantly changing subjects, avoiding direct answers, and rambling. His examination revealed that Plaintiff had full range of motion, no edema, and normal reflexes in her lower extremities. Plaintiff's responses in straight leg-raise testing were not characteristic of discogenic pain and not indicative of radicular pain. An x-ray of Plaintiff's lumbar spine was negative. Dr. Duncan concluded that, despite her long history of complaints, Plaintiff failed to demonstrate physical findings compatible with severe back problems. Tr. 149-153.

Objective testing also supported the ALJ's decision, as discussed above. X-rays of Plaintiff's spine on July 15, 2002 showed "dorsal scoliosis nothing acute," mild scoliosis with associated degenerative disc disease of the lumbar spine, and no abnormalities of the cervical spine. Tr. 186.

The ALJ's decision is also supported by the finding of State agency medical consultants. See 20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2); SSR 96-6p ("Findings of fact made by State agency ... [physicians ]... regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review."). On August 23, 2002, Dr. George L. Chandler assessed Plaintiff's physical RFC and opined that Plaintiff could perform medium work that involved less than moderate

7

exposure to hazards. Tr. 191-198. On November 5, 2002, Dr. Seham El-Ibiary affirmed Dr. Chandler's assessment. Tr. 198.

The ALJ's determination that Plaintiff could perform the mental requirements of work that involved simple tasks not requiring on-going interaction with the public or extended sustained concentration is supported by substantial evidence. Although Plaintiff claimed to have sought treatment at mental health centers for anxiety in 1988 and again prior to the hearing before the ALJ (Tr. 70, 294-295), the evidence contains no records of such treatment. The only record of treatment for Plaintiff's mental condition is from her primary care providers, who provided medications for anxiety, as discussed above. Significantly, none of these treating physicians placed any limitations on Plaintiff's ability to perform the mental requirement of work. See Lee v. Sullivan, 945 F.2d 687, 693 (4th Cir. 1991)(finding that no physician opined that claimant was totally and permanently disabled supported a finding of no disability); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)(treating physician's opinion entitled to great weight).

On June 13, 2002, Plaintiff was examined by Dr. Joseph K. Hammond, a psychologist, at the request of the Commissioner. Tr. 160-162. Plaintiff complained that she was "deeply and persistently sad." She denied a history of psychiatric hospitalization or outpatient mental health treatment. Plaintiff stated that she was involved in a motor vehicle accident in 1993 that was somehow related to a panic episode. Although Plaintiff reported she had recently tried to work for an insurance company, she claimed the job lasted only three months because she felt singled out, isolated, and incapable of working. Dr. Hammond diagnosed Plaintiff with moderately severe depression, marginal psychotic symptoms, an anxiety-related disorder with features of post-traumatic stress disorder, and fairly dependent personality qualities. He opined that Plaintiff

was unlikely to sustain attention and complete tasks in a timely manner; she had moderate limitations in her activities of daily living; and severe limitations in social functioning and concentration, persistence, and pace. Tr. 162. Plaintiff was examined by Dr. Hammond again on December 20, 2002. Tr. 155-159. Dr. Hammond opined that Plaintiff had a major depressive episode of at least moderate intensity, an anxiety related disorder with features of post-traumatic stress disorder and a pain disorder which might have some psychological contribution. He also noted that he could not rule out the possibility of some degree of a cry for help and mild exaggeration. Tr. 159.

The ALJ considered Dr. Hammond's opinion, but did not give it much weight based on Dr. Hammond's findings on the second visit that Plaintiff did not exhibit any of the signs of severe pain that she alleged and that she was calm in physical presentation (Tr. 155-156). See Tr. 25-26. Plaintiff reported to FNP Abernathy on June 17, 2002 (just a few days after Dr. Hammond's first examination), that she had run out of Xanax and had not been able to function for a couple of days. Tr. 171. The ALJ was not required to assign any particular weight to Dr. Hammond's opinion as he was not a treating psychologist. See 20 C.F.R. §§ 404.1527(d) and 416.927(d). Further, the ALJ's decision is supported by the records of Plaintiff's treating physicians and her lack of mental health treatment. The ALJ also noted that she accepted the opinions of the State agency medical consultants which he found consistent with the entirety of the evidence. The ALJ noted that these consultants considered Plaintiff's physical as well as mental impairments.. Tr. 26.

On June 21, 2002, Dr. J. K. Phillips, III, a psychologist, completed a Psychiatric Review Technique Form ("PRTF") based on a review of Plaintiff's records. Dr. Phillips opined that Plaintiff had affective and anxiety-related disorders which resulted in mild limitations in activities of daily

living, moderate limitations in social functioning, and moderate limitations in concentration, persistence, and pace. In a mental RFC assessment, Dr. Phillips opined that Plaintiff had no significant limitations in most areas of work-related mental functioning and moderate limitations in the areas of understanding, remembering, and carrying out detailed instructions, as well as interacting appropriately with the general public. He concluded that Plaintiff would be unable to sustain concentration for complex tasks or deal with public contact or a large number of other persons in the workplace, but she could "manage simple [instructions] over time for [unskilled] work." Tr. 204.

On January 2, 2003, Dr. Lisa Varner, a psychologist, completed a PRTF in which she found that Plaintiff had a depressive disorder, an anxiety-related disorder, a somatoform disorder, and a personality disorder resulting in moderate limitations in activities of daily living; social functioning; and concentration, persistence, and pace. In her mental RFC assessment, Dr. Varner opined that Plaintiff had no significant limitations in most areas of work-related mental functioning and moderate limitations in the areas of understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods; and interacting appropriately with the general public. Tr. 199-201. Dr. Varner concluded that Plaintiff's mental impairments would not preclude her from performing simple, repetitive tasks in a setting that did not require ongoing interaction with the public. Tr. 201.

    B.    <u>Vocational Expert</u>

At the hearing, the ALJ asked a VE to consider a hypothetical in which a claimant was restricted to medium work and had to avoid even moderate exposure to hazardous machinery

and vehicles. In addition, the ALJ asked the VE to assume that Plaintiff had mental impairments including that she was:

> moderately impaired in the ability to handle detailed instructions, tasks, maintain activities within a schedule – you know, maintain regular attendance, be punctual within customary tolerances...and maintain attention and concentration for extended periods and no public contact.

Tr. 299. In response, the VE testified that such a claimant would not be able to perform any jobs because:

> [N]o public contact would place her in basically an industrial setting. And with the number of moderates – well, of course the industrial setting is done almost exclusively on a production basis. So with moderate limitations and not being able to maintain attention and concentration, be punctual and maintain a pace within a schedule, work within a schedule, I think [work] would be prohibitive in that scenario.

Tr. 299-300. Plaintiff alleges that the ALJ erred in not accepting this testimony of the VE. The Commissioner contends the ALJ did not have to accept the testimony from the VE because she did not find that Plaintiff's RFC was restricted to the extent as that in the hypothetical to the VE, namely that the ALJ did not restrict Plaintiff from all public contact and did not find that Plaintiff was moderately limited in maintaining activities within a schedule and maintaining regular attendance.

Here, the ALJ did not err in not accepting the testimony of the VE (see Tr. 27, n. 1). At the fourth step of the disability inquiry,[2] a claimant will be found "not disabled" if the claimant is capable of performing his past relevant work either as he performed it in the past or as it is generally

---

[2]In evaluating whether a claimant is entitled to disability insurance benefits, the ALJ must follow the five-step sequential evaluation of disability set forth in the Social Security regulations. See 20 C.F.R. § 404.1520. The ALJ must consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to her past work, and (5) if not, whether the claimant retains the capacity to perform specific jobs that exist in significant numbers in the national economy. See id.

required by employers in the national economy. SSR 82-61. The claimant bears the burden of establishing that she is incapable of performing her past relevant work. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). Here, the ALJ found that Plaintiff could perform her past relevant work. The ALJ was not required to go to step five and determine that Plaintiff could perform other work using the medical-vocational guidelines or obtaining the testimony of a VE because the ALJ found that Plaintiff could perform her past relevant work. Pass v. Chater, 65 F.3d at 1203; Smith v. Bowen, 837 F.2d 635 (4th Cir. 1987)(VE enters the sequential analysis for determining disability after a claimant is found unable to do his past relevant work).

Additionally, the hypothetical question posed to the VE was based on limitations that the ALJ did not accept such that she was not required to accept the statement of the VE based on those limitations. See Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989)(In order for a VE's opinion to be relevant or helpful, it must be based upon a consideration of all the other evidence on the record and must be in response to hypothetical questions which fairly set out all of the plaintiff's impairments); Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987)(questions to the VE need only reflect those impairments that are supported by the record); Lee v. Sullivan, 945 F.2d 689, 698-94 (4th Cir. 1991)(noting that a requirement introduced by claimant's counsel in a question to the VE "was not sustained by the evidence, and the vocational expert's testimony in response to the question was without support in the record."). As noted above, Plaintiff's treating physicians did not place any limitations on Plaintiff's ability to perform mental work, and the ALJ accepted the limitations contained in the conclusions of the reports of the State agency psychologists (see Tr.

201, 204) that Plaintiff could perform simple tasks not requiring on-going interaction with the public or sustained concentration (Tr. 27).

C.  Credibility

Plaintiff alleges the ALJ erred in evaluating her pain.[3]  The Commissioner contends the ALJ's determination that Plaintiff's allegations of disability were not credible were well explained and well supported.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record.  See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994).  Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers.  A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the

---

[3]Contrary to Plaintiff's argument, the ALJ did not ignore Plaintiff's somatoform disorder (which notably was not diagnosed by any of Plaintiff's treating physicians, but was noted by a non-examining physician), but found that it was a "severe" impairment.  The ALJ considered all of Plaintiff's impairments in determining that Plaintiff's ability to perform work was restricted to medium, unskilled work which did not involve dangerous environments, ongoing interaction with the public, or an ability to engage in extended, sustained concentration.  See Tr. 27.

extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ's determination concerning Plaintiff's credibility and pain is supported by substantial evidence including the medical evidence, as discussed above. Despite Plaintiff's complaints of disabling pain, she does not appear to have ever followed up on referrals from her physicians (see Tr. 174, 178, 236) to see an orthopaedist or a pain management specialist. Although Plaintiff alleged an onset date of November 1, 1999, the record contains no medical records before April 2000, from February 6, 2003 until April 15, 2003, or from August 2003 until the ALJ's decision in October 2004. A failure to seek medical treatment may support a finding that a claimant's impairments are not of disabling severity. See Mickles, 29 F.3d. at 919-21.

Inconsistencies in the record also support the ALJ's finding. At the hearing in April 2004, Plaintiff testified that she had not had any kind of social contact in three or four years. On June 13, 2002, however, Plaintiff reported to Dr. Hammond that she had a boyfriend who wanted to marry her. Tr. 162. Plaintiff told Dr. Hammond that she was unable to sit for longer than fifteen minutes without severe pain, but then proceeded to sit continuously for forty minutes "without exhibiting signs of even mild pain." Tr. 156. Plaintiff reported to Dr. Hammond that scoliosis had "changed her life" and she suffered severe back pain (Tr. 162), but x-rays indicated her scoliosis was mild and not acute (Tr. 186), and an MRI of her lumbar spine showed no significant pathology (Tr. 236-237). Plaintiff claims she became disabled in 1999, but testified that she left her job as a towel folder in 1999 because she had to leave work to be with her daughter in court which lead to her being fired (Tr. 282). Plaintiff worked as a receptionist for a period in 2001 (this was not substantial gainful activity). At first she testified that she quit her job in 2001 because she felt that everyone was

staring at her, she next stated she was fired, then stated the company had to make cutbacks and laid her off, and later stated she was fired because of concentration problems. Tr. 279, 289. Additionally, Plaintiff did not consistently report where she lived, sometimes reporting that she lived in her own mobile home and other times that she lived with relatives. See Tr. 46, 99, 107, 245, 276-277, 280.

## CONCLUSION

Despite Plaintiff's claims, she fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock v. Richardson, supra. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, supra. It is, therefore,

RECOMMENDED that the Commissioner's decision be affirmed.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

August 29, 2006
Columbia, South Carolina